UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                          :

YASH KAMAT,                         :

                     Plaintiff,      :

                        :          25-CV-3307 (JMF)
        -v-                  :

                        :        <u>OPINION AND ORDER</u>
LEAGUE NETWORK, PBC et al.,    :

                 Defendants.   :

                        :
-----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

This case arises from the alleged breach of a settlement agreement between Plaintiff Yash Kamat and Defendants League Network, PBC ("League") and Alliance Reentry Centers, PBC ("Alliance" and, together with League, the "Company Defendants"). In 2021, Kamat invested in League for the purposes of obtaining legal permanent resident ("LPR") status through the EB-5 Immigrant Investor Program. *See* ECF No. 1 ("Compl."), ¶¶ 12-16; ECF No. 11 ("Answer"),[1] ¶¶ 14-16. After Alliance acquired League and immigration authorities denied Kamat's visa petition, the Company Defendants agreed to refund Kamat's investment in exchange for releasing the companies and their officers from liability and surrendering Kamat's rights to the stock he had purchased. *See* Compl. ¶¶ 21-23 & Ex. A ("Settlement Agmt.").

Kamat now brings claims against the Company Defendants for breach of this agreement and against League and its principal, Jay Whitehead, for securities fraud, common-law fraud, and negligent misrepresentation in connection with the original investment. *See* Compl. ¶¶ 26-58.

---

[1]    The Court notes that Defendants filed a second answer on the same date, but it is identical to its first. *Compare* ECF No. 11 ("Answer"), *with* ECF No. 13.

Three motions are pending before the Court.  The first is Whitehead's motion, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, to dismiss for lack of personal jurisdiction.  The second is Kamat's motion, pursuant to Rule 12(c), for judgment on the pleadings as to his breach-of-contract claim (Count II).  And the third is Defendants' motion, pursuant to Rule 15(a)(2), to amend their Answer.  For the reasons that follow, Whitehead's motion to dismiss for lack of personal jurisdiction and Defendants' motion to amend their Answer are DENIED, and Kamat's motion for judgment on the pleadings is GRANTED.[2]

## BACKGROUND

The following facts are undisputed unless otherwise noted.

Kamat is a citizen of India who has lived and worked in the United States on a nonimmigrant visa for many years.  *See* Compl. ¶¶ 9-12.  In an effort to acquire LPR status through the EB-5 Immigrant Investor Program — which "provides 'employment creation' visas to aspiring immigrants who make qualifying investments in U.S. commercial projects," *Zhou v. Noem*, No. CV 19-2650 (TJK), 2025 WL 416152, at *1 (D.D.C. Feb. 6, 2025) (citing 8 U.S.C. § 1153(b)(5)) — Kamat invested $500,000 in League in exchange for 115,931 shares of League Network Series EB-5 Preferred Stock ("EB-5 Stock").  *See* Compl. ¶¶ 14-16; Answer ¶¶ 14-16; Settlement Agreement 1.[3]  In 2024, however, U.S. Citizenship and Immigration Services denied Kamat's petition for adjustment of status, reasoning that Kamat could not establish eligibility at

---

[2]    The Court indicated in a bottom-line endorsement entered on January 14, 2026, that Whitehead's motion was denied for reasons to be explained in a forthcoming opinion.  ECF No. 52.  This is that opinion.

[3]    Although not relevant here, the minimum investment amount for projects in Targeted Employment Areas such as that at issue in this case, *see* Compl. ¶ 18(a); Answer ¶ 18(a), is now $800,000.  *See* EB-5 Reform and Integrity Act of 2022, Pub. L. 117-103, 136 Stat. 1070, 1072; *see also Zhou v. Noem*, No. CV 19-2650 (TJK), 2025 WL 416152, at *1 & n.1 (D.D.C. Feb. 6, 2025).

the time of filing because League had been acquired by Alliance and its business model had changed.  *See* Compl. ¶¶ 21-22; Answer ¶¶ 21-22.

Following this unfavorable decision, Kamat demanded the return of his investment.  *See* Answer ¶ 23.  On January 1, 2025, Kamat and the Company Defendants entered into a settlement agreement.  *See id*.  For his part, Kamat agreed not to sue and to surrender his EB-5 preferred shares.  In exchange, the Company Defendants agreed to reverse the transaction and to repay Kamat's investment in full.  *See* Settlement Agmt.  In accordance with the agreement, *see id.* § 2, Alliance also executed a Promissory Note, which required payment of the full $500,000 in four equal sums on specified dates throughout 2025, *see* Compl. Ex. B ("Note" and, together with the Settlement Agreement, the "Contracts").  As Chief Executive Officer of League, Whitehead signed the Settlement Agreement on behalf of the Company Defendants, *see* Settlement Agmt. 4, and signed the Note on behalf of Alliance, *see* Note 4.

As relevant here, both Contracts contain choice-of-law as well as forum-selection clauses.  With respect to choice of law, the Settlement Agreement specifies that it "shall be governed by and construed in accordance with the laws of the State of New York without regard to choice of law principles."  Settlement Agmt. § 6.7.  The Promissory Note, meanwhile, states that "[t]his Note, and all matters arising out of or relating to this Note, whether sounding in contract, tort, or statute will be governed by and construed in accordance with the internal laws of the State of New York, without giving effect to the conflict of laws provisions thereof to the extent such principles or rules would require or permit the application of the laws of any jurisdiction other than those of the State of Delaware."  Note § 6.2.  With respect to forum selection, the Settlement Agreement and Note require that "[a]ny actions arising out of or

3

relating to" the documents "be heard and determined exclusively in any state or federal court located in the State of New York, New York County."  Settlement Agmt. § 6.8; Note § 6.3.

On April 21, 2025, after the Company Defendants missed their first payment, *see* Answer ¶¶ 23-24, Kamat filed suit against Alliance, League, and Whitehead, *see* Compl. ¶¶ 26-58. Kamat brings a breach-of-contract claim (Count II) against the Company Defendants for failing to fulfill their payment obligations under the Contracts.  *See* Compl. ¶¶ 41-46.  He further alleges that, by making false or misleading representations to secure his initial purchase of the EB-5 Stock, League and Whitehead engaged in securities fraud in violation of Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and its implementing regulations (Count I), *id.* ¶¶ 26-40; common-law fraud (Count III), *id.* ¶¶ 47-52; and negligent misrepresentation (Count IV), *id.* ¶¶ 53-58.  As noted, Whitehead now moves, pursuant to Rule 12(b)(2), to dismiss for lack of personal jurisdiction.  *See* ECF No. 18-1 ("Whitehead Mem.").  In addition, Kamat moves, pursuant to Rule 12(c), for judgment on the pleadings with respect to Count II of the Complaint.  *See* ECF No. 31 ("Pl.'s 12(c) Mem.").  Finally, in response to Kamat's motion for judgment on the pleadings, all Defendants move, pursuant to Rule 15(a)(2), to amend their Answer to include an illegality defense to the breach-of-contract claim.  *See* ECF No. 36 ("Defs.' Amend. Mem.").

## DISCUSSION

The Court will begin with Whitehead's motion to dismiss for lack of personal jurisdiction and then turn jointly to Kamat's motion for judgment on the pleadings and Defendants' motion to amend their Answer, as the two motions are intertwined.

**A.  Personal Jurisdiction over Whitehead**

"To defeat a motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction, a plaintiff need only make a *prima facie* showing" that the court possesses personal jurisdiction over a defendant.  *Caplan v. Dollinger*, No. 24-CV-7996 (JMF), 2025 WL 1808530, at *3 (S.D.N.Y. June 30, 2025); *see also, e.g.*, *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84-85 (2d Cir. 2013) (per curiam).  Such a showing "entails making legally sufficient allegations, including an averment of facts that, if credited, would suffice" to establish that jurisdiction exists.  *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010) (cleaned up).  Critically, a "plaintiff is required to establish personal jurisdiction separately over *each defendant*," *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.,* 529 F. Supp. 3d 111, 135 (S.D.N.Y. 2021) (emphasis added), and "with respect to *each claim* asserted," *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004) (emphasis added).  In evaluating personal jurisdiction, a court must construe "all allegations . . . in the light most favorable to the plaintiff."  *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (internal quotation marks omitted).

Here, whether the Court can exercise jurisdiction over Whitehead turns on whether the forum-selection clauses in the Contracts apply to him as a non-party to those contracts.  *Compare* ECF No. 27 ("Pl.'s 12(b) Mem."), at 6-10, *with* ECF No. 30 ("Whitehead Reply"), at 1-3; *see also, e.g.*, *Everything Yogurt Brands, LLC v. Bianco*, No. 23-CV-01161 (LJL), 2024 WL 3497757, at *3 (S.D.N.Y. July 22, 2024) ("A party can . . . consent to [personal jurisdiction] through a valid forum selection clause." (citing *Philips v. Audio Active Ltd.*, 494 F.3d 378, 383-

84 (2d Cir. 2007))).[4]  Significantly, courts have disagreed about whether and when a forum-selection clause in a contract can apply to someone not party to the contract.  *See, e.g.*, *Marsh & McLennan Agency, LLC v. Alliant Ins. Servs.*, Inc., No. 25-CV-1260 (JAV), 2025 WL 2916153, at *7-8 (S.D.N.Y. Oct. 14, 2025) (observing that "courts in this District have diverged on" the propriety of "implying an out-of-state defendant's consent to personal jurisdiction based upon a contract to which [he] is not a party"); *compare, e.g.*, *Koh v. Koo*, No. 22-CV-6639 (JMF), 2023 WL 5352786, at *3 (S.D.N.Y. Aug. 21, 2023) (rejecting the "closely related" test as a basis for exercising personal jurisdiction over non-signatories to a contract with a forum-selection clause who are not otherwise bound by that contract), *with P.S. Fin., LLC v. Eureka Woodworks, Inc.*, 184 N.Y.S.3d 114, 133-34 (App. Div. 2023) (purporting to embrace the "closely related" test in limited circumstances).  But Whitehead makes no attempt to refute Kamat's argument that the forum-selection clauses bind him despite his status as a non-party to the Contracts; indeed, the argument he makes assumes that he is so bound.  *See* Whitehead Mem. 1-2; Whitehead Reply 1-3; *see also* Pl.'s 12(b) Mem. 6-9 (arguing that Whitehead is bound because he is "closely related" to the signatory Company Defendants).  Thus, he has forfeited any argument that he is not bound by the forum-selection clauses and "effectively concede[d]" the point.  *Brunero v. Vukasinovic*, No. 23-CV-6341 (ER), 2024 WL 4345731, at *7 (S.D.N.Y. Sept. 30, 2024); *see also, e.g.*, *Harris*

---

[4]    Kamat argues that Whitehead forfeited his argument about personal jurisdiction.  *See* ECF No. 27 ("Pl.'s 12(b) Mem."), at 10.  Not so, as Whitehead asserted the defense in his Answer, *see* Answer 15, and moved to dismiss for lack of personal jurisdiction shortly thereafter. *See, e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh v. UPS Supply Chain Sols., Inc.*, 74 F.4th 66, 70-71 (2d Cir. 2023) (holding a lack of personal jurisdiction defense was timely made when the party at issue asserted the defense in its answer, sought a pretrial conference a month later, and moved to dismiss on personal jurisdiction grounds a month after that); *see also, e.g.*, *Mattel, Inc. v. Animefun Store*, No. 18-CV-8824 (LAP), 2020 WL 2097624, at *3-4 (S.D.N.Y. May 1, 2020) (collecting cases).

*v. N.Y.C. Hum. Res. Admin.*, No. 20-CV-2011 (JPC), 2022 WL 3100663, at \*14 (S.D.N.Y. Aug. 4, 2022) ("Generally, a party forfeits arguments not sufficiently argued in the briefs.").

Instead, Whitehead's sole contention is that, even if he is bound by the forum-selection clauses, the Court still lacks personal jurisdiction because "[n]one of the claims" made against him "are subject to the forum selection clauses." Whitehead Reply 1. But that argument fails. Under New York law, which governs interpretation of the forum-selection clauses here, *see Martinez v. Bloomberg LP*, 740 F.3d 211, 217-18 (2d Cir. 2014),[5] it is the language of a clause, not the nature of the underlying action, that "determines which claims fall within its scope," *Couvertier v. Concourse Rehab. & Nursing, Inc.*, 985 N.Y.S.2d 683, 684 (App. Div. 2014); *cf. Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 335 (2d Cir. 2005) ("[A] 'sufficiently broad' choice-of-law clause would reach claims of tort arising incident to the contract."). Here, the forum-selection clauses provide that "[a]ny actions arising out of or relating to" the Settlement Agreement and Note "shall be heard and determined exclusively" in the courts of New York County. Settlement Agmt. § 6.8; Note § 6.3. The federal securities fraud claim and state tort claims plainly "aris[e] out of or relat[e] to" the Contracts. Indeed, pursuant to the Settlement Agreement, Kamat was required to forebear from bringing any such claims so long as payments under the Contracts were timely made. *See* Settlement Agmt. § 4. In the absence of any breach, those claims would not — indeed, could not — exist. Or to put it

---

[5]    Neither party "contest[s] the applicability of New York law." *Glover v. Bob's Disc. Furniture, LLC*, 621 F. Supp. 3d 442, 447-48 (S.D.N.Y. 2022). Indeed, Defendants expressly concede that New York law governs, *see* ECF No. 45 ("Defs.' Amend. Reply"), at 5 n.2, and both parties rely on New York cases in construing the Contracts, *see* ECF No. 31 ("Pl.'s 12(c) Mem."), at 6-7; ECF No. 36 ("Defs.' Amend. Mem."), at 2; ECF No. 37 ("Defs.' 12(c) Mem."), at 2; ECF No. 43 ("Pl.'s Amend. Mem. & 12(c) Reply"), at 8; Defs.' Amend. Reply 4, 7-9. Such "implied consent . . . is sufficient to establish choice of law." *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000); *see also, e.g.*, *Martinez v. Bloomberg LP*, 740 F.3d 211, 223 (2d Cir. 2014).

differently, establishing a breach of the Contracts is a condition precedent for the claims that he brings against Whitehead.  It follows that the claims arise out of and are related to the Contracts. *See, e.g.*, *BVM S.p.A in Liquidazione v. BVM USA Moda, Inc.*, No. 20-CV-6931 (JPC), 2021 WL 3077441, at *4 (S.D.N.Y. July 20, 2021) ("[B]road forum selection clauses can apply to claims where the contract is relevant as a defense. . . . This is because a defendant's invocation of a certain agreement as a defense makes the dispute one that is related to that agreement." (cleaned up)); *cf., e.g.*, *Yak v. BiggerPockets*, *LLC*, No. 20-3498, 2022 WL 67740, at *1 (2d Cir. Jan. 7, 2022) (finding that a more limited forum-selection clause did not encompass tort claims because, unlike here, those claims did not "relate to interpretation of [the parties'] contract[s]" (internal quotation marks omitted)).  Thus, the Court may exercise personal jurisdiction over Whitehead.

**B.  The Motions Concerning Kamat's Breach-of-Contract Claim**

Turning to Kamat's motion for judgment on the pleadings, Defendants essentially concede that their Answer offers no defense to Kamat's breach-of-contract claim (Count II) and that, in the absence of an amendment, he would be entitled to judgment on the pleadings with respect to that claim.  *See* ECF No. 37 ("Defs.' 12(c) Mem."), at 1-2; ECF No. 43 ("Pl.'s Amend. Mem. & 12(c) Reply"), at 1; *see also* Pl.'s 12(c) Mem. 2-6.  Thus, instead of contesting Kamat's motion on the merits, Defendants ask the Court to grant leave to amend their Answer to include a defense of illegality.  *See* Defs.' Amend. Mem.; Defs.' 12(c) Mem.  More specifically, they assert that, at the time of contracting, the Settlement and Note violated Section 160 of the Delaware General Corporation Law, *see* 8 DEL. C. § 160(a)(1), with which the Company Defendants — both Delaware corporations — were required to comply, rendering the Contracts void or unenforceable under New York law.  *See* Defs.' Amend. Mem.; ECF No. 36-1, at 15; Defs.' 12(c) Mem.; ECF No. 45 ("Defs.' Amend. Reply"), at 5-6.  As relevant here, Section 160

bars a corporation from "purchas[ing] or redeem[ing] its own shares of capital stock" if its capital is impaired or would be impaired by the redemption. 8 DEL. C. § 160(a)(1). In other words, "unless a corporation redeems shares and retires them to reduce its capital, a corporation may use only its surplus for the purchase of shares of its own capital stock." *SV Inv. Partners, LLC v. ThoughtWorks, Inc.*, 37 A.3d 205, 210-11 (Del. 2011). The aim is "to prevent boards from draining corporations of assets to the detriment of creditors and the long-term health of the corporation." *Id.*

The Court denies Defendants leave to add this defense because it fails as a matter of law. *See, e.g.*, *Williams v. Citigroup Inc.*, 659 F.3d 208, 214 (2d Cir. 2011) (noting that a court need not grant leave to amend "where the proposed amendment would be futile" (internal quotation marks omitted)).[6] That is because, pursuant to the Contracts' choice-of-law clauses, it is New York law, not Delaware law, that governs the validity of the Contracts. *See, e.g.*, *Petroleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, 51 F.4th 456, 472 (2d Cir. 2022) ("Th[e] general rule [that New York courts enforce choice-of-law clauses] applies even to issues of contract validity and the parties' ability to execute the agreement containing the choice-of-law clause." (internal quotation marks omitted)); *see also, e.g.*, *Lisa Cooley, LLC v. Native*, S.A., No. 20-CV-5800 (VEC), 2021 WL 860591, at *2 (S.D.N.Y. Mar. 5, 2021) ("A choice of law provision in a contract governs disputes about the 'existence or validity of that contract.'" (collecting cases)). And Defendants make no argument that the Contracts are invalid because they violate New York law in itself. That is fatal to Defendants' argument because, under New York law, "[n]on-New York statutes do not invalidate contracts that chose New York law and are valid and enforceable

---

[6]    In light of that conclusion, the Court need not and does not decide whether, as Kamat argues, Defendants are estopped from asserting an illegality defense. *See* Pl.'s Amend. Mem. & 12(c) Reply 7-8.

under New York law." *ABB, Inc. v. Havtech, LLC*, 112 N.Y.S.3d 713, 714 (App. Div. 2019) (rejecting argument that Maryland law, including for-cause termination requirements, "applied to invalidate" certain provisions of a contract with a New York choice-of-law clause); *see also, e.g.*, *Stevens & Co. LLC v. Espat*, No. 24-CV-5223, 2025 WL 950989, at *9 (S.D.N.Y. Mar. 28, 2025) ("New York law does not provide for consideration of the interests of other states when an agreement is governed by a clause selecting New York law."), *reconsideration denied*, No. 24-CV-5223, 2025 WL 1425324 (S.D.N.Y. May 16, 2025); *Willis Re Inc. v. Herriott*, 550 F. Supp. 3d 68, 91-97 (S.D.N.Y. 2021) (finding that, because New York choice-of-law rules called for application of New York law, California law "does not apply to void the [contract's] exclusive forum-selection provisions").

In theory, it could be argued that the choice-of-law clauses in the Contracts constitute an improper end-run around Delaware law and thus violate public policy. Indeed, "some courts, following the *Restatement (Second) of Conflict of Laws*, have stated that New York courts may refuse to enforce contractual choice-of-law provisions where 'application of the chosen law would violate fundamental public policy of another jurisdiction with materially greater interests in the dispute." *Willis Re,* 550 F. Supp. 3d at 96 (emphasis omitted). But once again, Defendants do not make this argument and, thus, have forfeited it. And in any event, this Court has previously concluded that the weight of New York authority indicates that "the only public policy relevant to the analysis" of whether a choice-of-law clause is void as against public policy "is the public policy 'of this State' — that is, New York." *Id.* at 95; *accord, e.g.*, *Stevens & Co.*, 2025 WL 950989, at *9 & n.1 ("New York Courts have consistently framed the public policy exception [to enforcement of a choice-of-law clause] as concerning whether 'application of [the chosen] law would be offensive to a fundamental public policy of *this State*."). *But see*

10

*Petroleos*, 51 F.4th at 472-73 (collecting two contrary cases).  Because enforcing the choice-of-law clause does not offend the public policy of *New York*, the choice-of-law clause is enforceable, and Section 160 does "not come into the picture at all."  *Willis Re*, 550 F. Supp. 3d at 90.  Accordingly, Defendants' motion for leave to amend their Answer is denied.

Having denied Defendants' motion, it follows that Kamat's motion for judgment on the pleadings as to Count II of the Complaint must be and is granted.  "A breach of contract claim under New York law has four elements: '(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages.'"  *Up State Tower Co., LLC v. Town of Cheektowaga*, No. 24-165-CV, 2025 WL 444207, at *1 (2d Cir. Feb. 10, 2025) (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011)).  Even assuming the truth of all factual allegations in Defendants' Answer and drawing all reasonable inferences in their favor, *see Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 305 (2d Cir. 2021), the Company Defendants have admitted to (1) the existence of the Contracts attached to Kamat's Complaint, (2) Kamat's performance of his obligations thereunder, and (3) their failure to make the required payments.  *See* Answer ¶¶ 42-44.  "This establishes [the Company Defendants'] breach of the [Contracts]," such that Kamat's motion for judgment on the pleadings as to Count II must be and is granted.  *Red Fort Cap., Inc v. Guardhouse Prods. LLC*, 397 F. Supp. 3d 456, 481 (S.D.N.Y. 2019); *see also Juster Assocs. v. City of Rutland, Vt.*, 901 F.2d 266, 269 (2d Cir. 1990) ("[J]udgment on the pleadings [is appropriate] only if . . . no material issue of fact remains to be resolved and that [the movant] is entitled to judgment as a matter of law" (internal quotation marks omitted)).  Kamat is accordingly entitled to damages of

11

$500,000 plus interest and reasonable attorney's fees as provided for in Section 5 of the

Promissory Note.  *See* Note §§ 5.1(a), 5.2.[7]

### CONCLUSION

For the foregoing reasons, Whitehead's motion to dismiss for lack of personal

jurisdiction and Defendants' motion to amend their Answer are DENIED, and Kamat's motion

for judgment on the pleadings is GRANTED.  The parties should be prepared to address at the

appropriate time how much Kamat is entitled to as interest and attorney's fees for Count II.

The Clerk of Court is directed to terminate ECF Nos. 18, 31, 36.


SO ORDERED.

Dated: January 23, 2026
      New York, New York                              JESSE M. FURMAN
                                           United States District Judge

---

[7] When Defendants submitted their Answer on June 13, 2025, Defendants had only defaulted on two of the four payments.  *See* Answer ¶¶ 23-24.  The Note, however, includes an acceleration clause, which provides that if Alliance misses a scheduled payment, "all principal shall become immediately due and payable."  Compl. Ex. B ("Note"), § 5.1.  And, in any event, there is no dispute that, if judgment on the pleadings on Count II is in fact granted, it should be granted as to the full settlement amount.