# Gregory Zimmer, Esq.

GZimmer@GZimmerLegal.com
O:  (914) 402-5683
M:  (516) 991-1116

March 9, 2026

**VIA ECF**

Honorable Jesse M. Furman, U.S.D.J.
United States District Court
Southern District of New York
500 Pearl St., Courtroom 24B
New York, New York  10007-1312

Re:  *Kamat v. League Network, PBC, Case No. 1:25-cv-03307–JMF*

Dear Judge Furman:

I represent Defendants League Network, PBC ("League Network"), Alliance Reentry Centers, PBC ("Alliance Reentry") and Jay Whitehead ("Whitehead" and, together with League Network and Alliance Reentry, "Defendants") in the in the above-referenced matter.  I write in response to the letter motion to compel discovery filed by Plaintiff Yash Kamat ("Kamat") on March 4, 2026 (the "Motion") [Dkt. No. 72].

At the outset I want to assure the Court that I take discovery obligations seriously and Orders entered by the Court even more seriously.  Since I have appeared in this case I have engaged with Kamat's counsel and Defendants in a good faith effort to address any outstanding discovery issues while simultaneously getting up to speed on the substance of this action as well as the procedural status of the case.

I was aware that my co-counsel provided a supplemental production on or about January 29, 2026 in response to the Court's Order dated January 14, 2026 ordering Defendants to produce seven categories of documents [Dkt. No. 52] (the "Discovery Order").  When requested by Kamat's counsel I of course agreed to participate in a meet and confer regarding the prior supplemental production and any deficiencies they claimed existed with respect to that production or the Discovery Order.  That conference occurred on February 18, 2026.  During the conference Kamat's counsel identified several categories of documents that they believed had not fully been produced (or had not been produced at all).  I of course agreed to look into each of those issues and stated that I would attempt to get back to them by February 23, 2006.  Although I noted that Defendants had made a motion to stay discovery in the case, contrary to any suggestion in the Motion, I did not in any way delay my investigation into discovery issues or Defendants' response to Kamat due to the pendency of the stay motion.

Omitted from the Motion is the fact that after Kamat's counsel sent an e-mail purporting to summarize our meet and confer discussion I responded specifically noting that while I would endeavor to obtain meaningful responses to the issues they raised by February 23, I could not commit to doing so because I was new to the case and might be required to obtain information

Honorable Jesse M. Furman, U.S.D.J.
March 9, 2026
Page 2

from third parties to do so.  *See* e-mail dated February 23, 2026, annexed hereto as Exhibit 1.  I have, in fact, made good faith efforts to obtain responsive information and provided Kamat's counsel with an update on all outstanding discovery issues.

The Court's Discovery Order addressed seven (7) categories of documents:

1. All documents concerning any investors in League Network or Alliance Reentry Centers investors that received EB-5 visas.

2. All documents concerning defendants' communications with USCIS concerning defendants' EB-5 investors.

3. All documents concerning the sale or acquisition of League Network by Alliance Reentry Centers, including communications, financial information, source of funds, contracts and drafts of contracts.

4. All documents concerning the impact that the sale or acquisition of League Network by Alliance Reentry Centers would have on League Network's operations.

5. Organization charts and capital tables for League Network and Alliance Reentry Centers.

6. League Network's business plans from 2021 to the present.

7. League Network's financial statements, general ledgers and tax returns from 2021 to the present.

Kamat's counsel also indicated that they had not received a privilege log from my co-counsel with respect to documents withheld with respect to earlier productions on privilege grounds and asked that I provide one, which I agreed to do.[1]

Kamat's characterization of Defendants' conduct following our meet and confer omits significant, relevant events and communications.  For example, Kamat omits from the Motion the fact that I addressed each category of documents directly in e-mail correspondence on March 2, 2026.  *See* e-mail dated March 2, 2026, annexed hereto as Exhibit 2.  That communication stated:

With respect to the issues in the Court's memo endorsement:

1. I am in the process of trying to locate communications with the EB-5 participant who received a visa and will provide what I find unless any of the documents are privileged.

2. League Network and Alliance Reentry do not speak directly with USCIS about their participants.  I am informed that only the applicant and their counsel can communicate with USCIS regarding their specific petitions.  Accordingly, I am told that no responsive documents exist.

3. League Network and Alliance Reentry had common management so there were no formal negotiations or offers exchanged beyond the work of attorneys who documented the deal.  As I have told you my clients

---

[1] Counsel for the parties also agreed that Whitehead's deposition would occur remotely on March 10, 2026.

Honorable Jesse M. Furman, U.S.D.J.
March 9, 2026
Page 3

reached out to their lawyers who may have responsive documents but did not receive a response or were told that the law firms were unwilling to provide documents.  [During our meet and confer I offered to provide Kamat with the names of the law firms so that he could issue subpoenas if he deemed that appropriate.  Kamat's counsel did not ask for the names or any other information.]

4.  I am told that documents responsive to this request in my clients' possession have already been produced.  I am informed that the majority of these communications were verbal and were with attorneys.

5.  I am told that both League Network and Alliance Reentry were small operations and did not have org charts.

6.  There are no business plans for League Network from 2021 to the present because League Network did not exist as an operational entity separate from Alliance Reentry during that time period.

7.  Similarly, there are no financial statements for League Network from 2021 to present beyond has already been produced because League Network did not exist as an entity separate from Alliance Reentry during that time period.

Thus, my communication of March 2 informed Kamat that of the seven (7) categories addressed in the Discovery Order, my consultation with Defendants to date revealed either that no documents existed, or that it was unlikely that any responsive documents existed, with respect to four (4) categories (categories 2, 5, 6 and 7) and explained specifically why that was the case. Kamat may not like that answer, but they received the answer.  Yet Kamat made the Motion with respect to all seven (7) categories and omitted any mention of my efforts to determine whether additional responsive documents existed with respect to each category, that I informed them none existed with respect to four (4) of the (7) categories, and also failed to inform the Court of my responses with respect to the remaining categories.

Kamat failed to inform the Court that I agreed to determine whether any additional responsive documents responsive to each category of documents existed and to produce them if them did.

With respect to category 1, I agreed to determine whether additional documents existed and to produce any responsive, non-privileged documents I was able to identify.  I have conferred with Defendants and have identified additional documents which I am in the process of reviewing and will provide to Kamat early this week.

With respect to category 3, I conveyed what I learned to date from Defendants.  I have conferred further with Defendants and have identified additional documents which may be responsive to category 3.  I am in the process of reviewing them and will provide to Kamat early this week.

I also informed Kamat that my understanding was that all documents responsive to category 4 were already produced by my co-counsel.  However, I have conferred further with

Honorable Jesse M. Furman, U.S.D.J.
March 9, 2026
Page 4

Defendants and have identified additional documents which may be responsive to category 4. I am in the process of reviewing them and will provide to Kamat early this week.

If any additional responsive documents are withheld on privilege grounds I will of course provide Kamat with an appropriate privilege log.

Kamat argues that Defendants did not provide him with an appropriate privilege log . This is inaccurate. It is accurate that the actual log references only three e-mail communications because Defendants have withheld only 3 documents on privilege grounds to date. But Kamat was aware that only three documents had been withheld on privilege grounds because the written discovery responses served by Defendants identified the three documents and provided privilege-related information about each of them individually in narrative form. *See* Respondents' Response to Discovery Order of January 14, 2026, annexed hereto as Exhibit 3 at pp. 2-3. However, to accommodate Kamat and consistent with my normal practice I provided Kamat with a typical table-formatted privilege log with respect to each. *See* privilege log, annexed hereto as Exhibit 4.

Kamat states that the log did not identify the privilege(s) that Defendants assert apply to the documents. This is literally accurate but misleading. When I sent the table-form privilege log I explained in the e-mail attaching the log that I had difficulty formatting the table and stated in the body of the e-mail the specific privileges that Defendants' assert apply to the logged documents. *See* e-mail dated March 2, 2026, annexed hereto as Exhibit 5. Defendants respectfully submit that the omission of this information from the Motion while claiming that the "log" did not provide notice of applicable privileges is inaccurate.

Kamat further argues that the log did not contain the subject matter of the documents withheld. This is false. As has been my practice throughout my career, when logging the three e-mails I provided the subject line of each in a column titled "Subject." I did redact from the Subject entries the names of other clients of Defendants because Defendants believe that they have an obligation to maintain confidentiality and the privacy of their clients and their immigration status.[2] It is also true that the full subject line in one of the e-mails was the name of a client of Defendants. Kamat never responded to the e-mail, nor did he seek any clarification concerning the stated Subject entries or any other aspect of the provided privilege log. Instead, he immediately filed the Motion. Defendants respectfully submit that this was inconsistent with the Court's requirement that the parties confer on the relevant subject matter before a discovery motion is made. In any event, had Kamat's counsel reached out to me requesting clarification I would gladly have provided it.

Kamat also complains that one of the attachments noted in the provided privilege log was a draft document and argue that the document may not be privileged. Again, after receiving the provided privilege log Kamat never contacted Defendants to inquire about the log or to confer about or dispute the privilege designations before filing the Motion. Had Kamat's counsel

---

[2] When I was engaged in this matter I provided Kamat's counsel with a proposed standard Confidentiality Agreement and Proposed Order for consideration. They provided certain proposed revisions, most of which I agreed to. However, one of their proposed revisions would have negated Defendants' ability to designate this type of information as Confidential. I informed Kamat's counsel that this was unacceptable to Defendants and that I would present the issue to the Court if we could not agree. Kamat's counsel has not yet provided me with a final answer whether they would abandon their objection to this provision and we agreed to confer further on it.

Honorable Jesse M. Furman, U.S.D.J.
March 9, 2026
Page 5

contacted me I would have informed them that when preparing the provided privilege log I was provided with the three previously logged e-mails by co-counsel.  I asked co-counsel to provide me with the attachments listed on the single e-mail with attachments but did not receive an immediate response before the unilaterally imposed deadline Kamat's counsel insisted on for provision of the log.  However, I was informed by co-counsel after sending the log, and after the Motion was filed, that the attachments are not in Defendants' possession.  Had Kamat's counsel conferred with me regarding their concern about the privilege designation with respect to the listed attachment this issue would have easily been resolved.

In sum, Defendants produced significant additional documents at or before the time required by the Discovery Order.  Defendants also addressed each category of documents referenced in the Court's Discovery Order with Kamat through a meet and confer process, provided specific explanations of why most of the categories of documents did not exist, and agreed to search for and produce any additional non-privileged responsive documents that were identified.  Without consulting with Defendants further, Kamat filed the Motion while that process was still underway.  Defendants have identified additional responsive documents that are in the process of being reviewed and will be provided in the next couple of days, as soon as that review is complete.  A final review for additional documents will also be conducted and any additional documents will also be produced forthwith, along with a supplemented privilege log as appropriate.  Further, Defendants did provide a standard privilege log to Kamat listing the date, subject line of the e-mail, sender, recipients, and copied and blind copied recipients of each.  I also provided the privilege(s) that Defendants believe apply to each of the three e-mails in my cover e-mail.  Rather than contact me to address any deficiencies they believed existed in the log, or clarify its contents, Kamat immediately filed the Motion.

Kamat also argues that the above is impacting his ability to depose Defendant Whitehead on March 11, 2026.  I note that Kamat originally noticed Whitehead's deposition for January 22, 2026.  During our first meet and confer call on February 18, 2026, Kamat's counsel asked whether Whitehead was available for his deposition remotely on March 10, 2026, which was agreed to.  Kamat's counsel subsequently asked whether Whitehead could instead appear remotely on March 11, 2026, which we also agreed to.  In light of the fact that Defendants are in the process of producing additional documents, we will again work cooperatively with Kamat's counsel to reschedule Whitehead's deposition once we have provided the additional documents and Kamat has had an opportunity to review them.  This will not impact the ability of the parties to complete discovery within the time frames set forth in the Court's most recent scheduling order because the current fact discovery cutoff date is April 29, 2026.

For the foregoing reasons, Defendants respectfully request that the Court deny Kamat's Motion, grant Defendants until Friday, March 13, 2026 to complete their supplemental document search, review and production, and grant Defendants such other and further relief as the Court deems just and proper.

Thank you for your attention to this matter.

Respectfully submitted,

Honorable Jesse M. Furman, U.S.D.J.
March 9, 2026
Page 6

/s/ Gregory Zimmer, Esq.

Gregory Zimmer, Esq.
(914) 402-5683
GZimmer@GZimmerLegal.com

cc:  All counsel of record (via ECF)

Upon reading the parties' letters, the Court is inclined to agree with defense counsel that many of Plaintiff's complaints could have been addressed through the meet-and-confer process without the need for Court intervention.  That said, defense counsel's letter concedes that Defendants have not complied with the Court's Order of January 14, 2026, which mandated full compliance with the relevant discovery requests within two weeks.  For that reason, Defendants (but not defense counsel, who entered the case after the two-week period) are ORDERED to reimburse Plaintiff for the costs and fees incurred in filing the instant letter motion.  See Fed. R. Civ. P. 16(f)(1)(C), (2); Fed. R. Civ. P. 37(b)(2)(C).  The parties shall promptly confer in an effort to reach agreement on the amount of those fees and costs and file a joint letter on that front no later than March 16, 2026.  Meanwhile, Defendants shall - on pain of further sanctions - cure any and all discovery deficiencies with respect to the categories at issue by March 13, 2026.  If, after those productions, Plaintiff believes that deficiencies remain, counsel shall meet and confer in an effort to resolve their disputes for at least one hour before either party seeks relief from the Court.  Going forward, both sides must do better.

The Clerk of Court is directed to terminate ECF No. 72.

SO ORDERED.

March 9, 2026